UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DAN RAY STEVENSON,

                        Plaintiff,      **No. 1:16-cv-00379(MAT)**
                                                        **DECISION AND ORDER**
              -vs-

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

                        Defendant.
_____

## INTRODUCTION

Represented by counsel, Dan Ray Stevenson ("Plaintiff") instituted this action pursuant to Title II of the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security ("the Commissioner")[1] denying his application for Disability Insurance Benefits ("DIB"). This Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g), 1383(c).

## PROCEDURAL STATUS

Plaintiff filed an application for DIB on November 20, 2012, alleging disability beginning October 31, 2009. (T.120-26).[2] After

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Citations in parentheses to "T." refer to pages from the certified transcript of the administrative record.

this application was denied (T.78-81), Plaintiff requested a hearing, which was held in Buffalo, New York, on August 12, 2014, by administrative law judge Timothy J. Trost ("the ALJ") (See T.26-65, 84-85). Plaintiff appeared with his attorney and testified. The ALJ did not call any witnesses. On December 11, 2014, the ALJ issued an unfavorable decision. (T.9-21). The Appeals Council denied Plaintiff's request for review on March 21, 2016, making the ALJ's decision the final decision of the Commissioner. (T.1-4). This timely action followed.

The parties have cross-moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. The Court adopts and incorporates by reference herein the undisputed and comprehensive factual summaries contained in the parties' briefs. The record will be discussed in more detail below as necessary to the resolution of this appeal. For the reasons that follow, the Commissioner's decision is affirmed.

## THE ALJ'S DECISION

The ALJ followed the five-step procedure established by the Commissioner for evaluating disability claims. See 20 C.F.R. § 404.1520.

At step one, Plaintiff was found to meet the insured status requirements of the Act through December 31, 2014. He had not engaged in substantial gainful activity ("SGA") since October 31, 2009, the

alleged onset date.

At step two, the ALJ found that Plaintiff had the following "severe" impairments: Asperger's Syndrome, anxiety disorder, and depressive disorder. (T.14). The ALJ also determined that Plaintiff has the following non-severe impairments: hypertension, flat feet, diabetes mellitus (type 2), congestive heart failure, hyperlipidemia, and obesity, but that these impairments fail to produce more than a minimal effect on Plaintiff's ability to perform basic work activities, a finding which Plaintiff does not contest on appeal.

At step three, the ALJ determined that Plaintiff's impairments, considered singly or in combination, do not satisfy the criteria of any impairment in the Listings of Impairments, set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1. (T.15). In particular, the ALJ considered the following Listings: 12.04 (Affective Disorders), 1.06 (Anxiety-related Disorders), and 12.10 (Autistic Disorder and other pervasive developmental disorders). With regard to the "paragraph B" criteria for these listed impairments, the ALJ determined that Plaintiff does not have "marked" limitations in any domains of functioning. In regards to activities of daily living, Plaintiff has "mild" restrictions. The ALJ noted that Plaintiff lives with his parents but he can cook, clean, launder, manage his medications and grocery shop, dress, bathe, and groom independently; and he has hobbies and interests

including Dungeons and Dragons, stop-motion animation, outdoor survival, reading, and collecting television shows on DVD. In the area of social functioning, the ALJ found that Plaintiff has "mild" difficulties. Although Plaintiff reported that he never really had many friends, the ALJ noted, Plaintiff has been involved in a Dungeons and Dragons club since 2007, he does see one of the players outside of meetings, he describes his family relationships as "okay", and he can identify basic emotions of other people, though he has difficulty noticing subtler, non-verbal feedback. With regard to the ability to maintaint concentration, persistence or pace, the ALJ found that Plaintiff has "moderate" difficulties and noted that the record supports "some" of the deterioration claimed by Plaintiff in this category. As for episodes of decompensation, the ALJ concluded that Plaintiff has not experienced any such episodes at all.

Prior to proceeding to step four, the ALJ assessed Plaintiff as having the residual functional capacity ("RFC") to perform "essentially the full range of all work activities" with some "minor" non-exertional limitations due to his Asperger's Syndrome, depression and anxiety disorders. In particular, the ALJ determined that Plaintiff "retains the ability to do the following on a sustained basis in a competitive employment setting: learn, remember and carry out job functions, concentrate upon and attend to the duties of the job, make appropriate employment-related

judgments, respond to supervision and co-workers in usual job settings, deal appropriately with routine changes in the work setting in a work environment free of unexpected loud noises." (T.18).

At step four, the ALJ determined that Plaintiff has past relevant work as a metal finisher (performed at the "heavy" exertional level) and a kitchen helper (performed at the "medium" exertional level). The ALJ noted that Plaintiff worked as a metal finisher from September 2000, to October 2009; his employment ended not due to his impairments but because the company he worked for went out of business following the recession. The ALJ found that Plaintiff also could perform his past relevant work as a kitchen helper, which he performed on a part-time basis, but at SGA levels, from January 1991, to January 2000. (T.20-21).

Because the ALJ found that Plaintiff could perform his past relevant work, the ALJ did not proceed to step five. Accordingly, the ALJ entered a finding of not disabled.

**SCOPE OF REVIEW**

A decision that a claimant is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards. See 42 U.S.C. § 405(g). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [the district court] will not substitute [its] judgment for that of the Commissioner." Veino

v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002). This deferential standard is not applied to the Commissioner's application of the law, and the district court must independently determine whether the Commissioner's decision applied the correct legal standards in determining that the claimant was not disabled. Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984). Therefore, this Court first reviews whether the applicable legal standards were correctly applied, and, if so, then considers the substantiality of the evidence. Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987).

**DISCUSSION**

**I. Failure to Discuss Opinion of State Agency Consultant (Plaintiff's First Point)**

Plaintiff asserts that the ALJ committed legal error in failing to discuss the medical opinion offered by Dr. Totin, a State agency psychological review consultant, who completed a psychiatric review technique ("PRT") and a mental RFC assessment on April 17, 2013. (See T.70-71, 73-75). See 20 C.F.R. § 404.1527(e)(2)(ii) ("State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider findings and other opinions of State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists as opinion evidence,

except for the ultimate determination about whether you are disabled[.]") (version eff. Aug. 24, 2012 to Mar. 26, 2017).

The Commissioner concedes that neither of these forms by Dr. Totin were explicitly referenced by the ALJ in his decision. Nevertheless, the Commissioner argues, this does not mean they were not considered. See, e.g., Durakovic v. Colvin, No. 3:12-CV-6(FJS), 2014 WL 1293427, at *8 (N.D.N.Y. Mar. 31, 2014) ("[I]t is not 'require[d] that [the ALJ] have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability.'") (quoting Mongeur v. Heckler, 722 F.2d 1033, 1040 (2d Cir. 1983) (per curiam) (citation omitted in original); citing Barringer v. Comm'r of Soc. Sec., 358 F. Supp.2d 67, 79 (N.D.N.Y. 2005) (stating that "'an ALJ is not required to discuss all the evidence submitted, and [his] failure to cite specific evidence does not indicate that it was not considered'") (quoting Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000)); other citation omitted).

Here, although the ALJ did not discuss Dr. Totin's opinion, the ALJ indicated in his decision that he considered "all of the evidence" and the "entire record" in making his findings regarding Plaintiff's DIB claim. (T.12, 18). See, e.g., Miles v. Harris, 645 F.2d 122, 124 (2d Cir. 1981) ("Notwithstanding the apparent inconsistency between the reports of Dr. Delahanty and that of Dr. Elstein, we are unwilling to require an ALJ explicitly to reconcile

-7-

every conflicting shred of medical testimony. . . . It is sufficient that the ALJ noted that he carefully considered the exhibits presented in evidence in reaching his decision.").

Even assuming there was legal error, any such error was harmless insofar as the ALJ's omission could have had no effect on the ultimate RFC assessment. As an initial matter, the Court notes that Dr. Totin was a consultant who only reviewed Plaintiff's mental health care records. Since he did not personally examine Plaintiff, the ALJ presumptively was entitled to accord Dr. Totin's entitled to less weight than the opinions issued by the providers who examined or treated Plaintiff personally. Indeed, the ALJ assigned significant weight to the opinions of two examining providers, Dr. Michael Santa Maria and Dr. Greg Fabiano. Dr. Santa Maria, who evaluated Plaintiff on August 9, 2010 (T.198-05), noted that while Plaintiff reported social anxiety symptoms, he participated in a role playing game group every other Saturday since 2007. (T.198). He enjoyed reading but was bothered by loud, unexpected sounds. (T.199). Plaintiff reported to Dr. Santa Maria that he had a good relationship with his parents. (T.199). He paid his cable bill by money order and independently bathed, dressed, cooked, washed laundry, cleaned, managed his medication, and went grocery shopping, although he did not drive. On examination, Plaintiff was fully oriented, but made inconsistent eye contact. (T.200). Plaintiff completed four or five "serial seven"

subtractions from 100 and five out of five "serial three" subtractions from 50; recalled two of three words after a brief delay; and accurately completed three steps in a three-step command. He could not spell "world" backward, but could spell it forward. His speech was normal and there was no evidence of self-harm or threat of harm to others, or any manic, paranoid, or delusional symptoms. Dr. Santa Maria noted that Plaintiff's responses were prompt and careful, and Plaintiff was polite and cooperative. (T.200). Dr. Santa Maria opined that Plaintiff met the diagnostic criteria for Asperger's Disorder, and, as a result, experienced some difficulties with both verbal and nonverbal aspects of communication. (T.204). Nonetheless, Plaintiff's overall intellectual abilities were in the average range; he demonstrated strength in verbal aspects of intellect with relative weakness in some aspects of attention and processing speed. In general, Plaintiff was stronger in verbal versus nonverbal abilities. (T.204). In Dr. Santa Maria's opinion, Plaintiff had the cognitive capacity to handle certain types of work, including his past work in metal finishing and kitchen help. (T.205).

Gregory Fabiano, Ph.D., evaluated Plaintiff on February 5, 2013, at the request of the State Agency. Again, Plaintiff reported that he stopped working because he was let go for budget reasons and not his work performance or disability. On examination, Dr. Fabiano noted that Plaintiff was well groomed but had poor eye

contact. His speech was adequate and his thought process was coherent; he was able to count, perform simple calculations and do serial three's. Plaintiff was able to cook, shop and manage money, but did not do general cleaning, laundry, drive or use public transportation.[3] Dr. Fabiano observed that "some of his difficulties were caused by motivation issues as well as some of his social pragmatic [sic] issues." Dr. Fabiano was of the opinion that, notwithstanding his Asperger's Syndrome and anxiety symptoms, Plaintiff could perform simple work, maintain attention and concentration, maintain a schedule, learn new tasks, perform complex tasks, make appropriate decisions, relate adequately with others and appropriately deal with stress.

Plaintiff urges the Court to essentially disregard the foregoing opinions issued by examining physicians Dr. Santa Maria and Dr. Fabiano, which are not inconsistent with the ALJ's RFC assessment, in favor of a select few findings by non-examining consultant Dr. Totin. In particular, Plaintiff cites Dr. Totin's findings in section I of the mental RFC assessment that Plaintiff has "moderate" limitations in certain areas of maintaining concentration and persistence, social interaction, and adaptation.

---

[3] The Court notes that only the failure to use public transportation could be relevant to Plaintiff's symptoms from his mental impairments (e.g., anxiety and panic attacks), since he has no severe physical impairments which would preclude him from cleaning and doing laundry at home.

(T.73-75).[4] Here, rather than provide a narrative as contemplated by POMS DI 24510.060(B)(4), Dr. Totin simply wrote, "see ptrf [sic]". (See T. 74-75, referring to T.71). This circular direction by Dr. Totin back to his PRT findings was not particularly illuminating. In any event, it does assist Plaintiff's argument, since these findings were not binding on the ALJ. See 20 C.F.R. § 404.1527(e)(2)(I) ("Administrative law judges are not bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists.") (version eff. Aug. 24, 2012 to Mar. 26, 2017). Dr. Totin's ultimate conclusion, based on the PRT findings, was that Plaintiff had a "moderate" psychiatric impairment that would not preclude him from working, a conclusion which is not at odds with the ALJ's RFC assessment. (T.71). Significantly, Dr. Totin found that Plaintiff had no significant limitations in the following areas: carrying out very short and simple instructions, carrying out detailed instructions, maintaining concentration for extended periods, performing activities within a schedule, maintaining regular attendance,

---

[4] The Commissioner explains that this section of the form to which Plaintiff refers is used to initially rate an individual's abilities to perform sustained work activities and, according to Program Operations Manual System (POMS) DI 24510.060(B)(2), is "merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and does not constitute the RFC assessment." Id. (emphasis omitted). Section III ("Functional Capacity Assessment") is where "the actual mental RFC assessment is recorded." Id. (emphasis omitted). Section III is a narrative that explains the "conclusions indicated in Section I, in terms of the extent to which these mental capacities or functions could or could not be performed in work settings." POMS DI 24510.060(B)(4).

making simple-work related decisions, and being punctual within customary tolerances, and had only moderate limitations in sustaining an ordinary routine and working with or in proximity to others without being distracted by them. (T.74). Dr. Totin then stated that a low-stress, low-contact setting "*would be optimal*[.]" (T.71; emphasis supplied). However, contrary to Plaintiff's argument, Dr. Totin's use of the conditional "would be" and description of such a setting "optimal" indicates that this was not meant to be a mandatory, non-exertional limitation, but rather would be the most favorable work setting for Plaintiff. In any event, as noted above, the ALJ was not required to adopt Dr. Totin's recommendation about what would be the ideal work environment for Plaintiff.

**II. Erroneous Credibility Assessment (Plaintiff's Second Point)**

Plaintiff contends that the ALJ's credibility assessment was the product of legal error and unsupported by substantial evidence.

The ALJ noted Plaintiff's testimony that he would be unable to sustain full-time work activity, 8 hours a day, 5 days a week or an equivalent schedule because (1) he suffers from anxiety and has panic attacks, (2) has memory problems, (3) he forgets to take his medications, and (4) his Asperger's disorder has worsened as he has gotten older. The ALJ then recited the factors set forth in the Commissioner's Regulations to be used when evaluating the intensity and persistence of a claimant's subjective complaints and symptoms,

including his "daily activities"; "[t]he location, duration, frequency, and intensity of [his] pain or other symptoms"; "[p]recipitating and aggravating factors"; "[t]he type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate [his] pain or other symptoms"; "[t]reatment, other than medication, . . . received for relief of . . . pain or other symptoms"; "[a]ny measures . . . used to relieve . . . pain or other symptoms"; and "[o]ther factors concerning [his] functional limitations and restrictions due to pain or other symptoms." 20 C.F.R. § 404.1529(c)(3). The ALJ stated that Plaintiff's "allegation of total disability is not credible to the extent alleged[,]" and then proceeded to discuss various items of evidence in the record. Plaintiff contends that the ALJ failed to specifically refer to these credibility factors when assessing Plaintiff's testimony and failed to provide sufficiently specific reasons for rejecting the Plaintiff's subjective complaints.

"[W]hile it is 'not sufficient for the [ALJ] to make a single, conclusory statement that' the claimant is not credible or simply to recite the relevant factors, [Social Security Ruling 96-7p, 1996 WL 374186, at *2 (S.S.A. July 2, 1996]], remand is not required where 'the evidence of record permits [the court] to glean the rationale of an ALJ's decision[.]'" Cichocki v. Astrue, 534 F. App'x 71, 76 (2d Cir. 2013) (unpublished opn.) (quoting Mongeur v. Heckler, 722 F.2d 1033, 1040 (2d Cir. 1983)). Here, the ALJ's

-13-

analysis and organization was not a model of clarity, and the Court agrees that the ALJ made an ill-advised editorial comment about Plaintiff's life trajectory, the Court finds the ALJ's credibility discussion was sufficiently specific to meet the requirements adopted by courts in this Circuit.

As noted above, the ALJ noted that Plaintiff believed he was disabled from performing full-time work due to his anxiety and panic attacks, memory problems (e.g., forgetting to take his medications), and increased symptoms from his Asperger's Syndrome as he has aged. The ALJ discussed the opinion of Dr. Drew Messer, which largely echoed Plaintiff's subjective complaints regarding his Asperger's Syndrome, and found that it was contradicted by Plaintiff's "lengthy and steady work record," which reveals he held employment as a kitchen helper for 10 years and then a job as a metal finisher for 9 years, and only stopped working because he was laid off due to the economic downturn in 2009, not due to any performance-related issues on Plaintiff's part. This evidence implicates the credibility factor that pertains to the nature and extent of Plaintiff's daily activities as well as the "catch all" category in 20 C.F.R. § 404.1529(c)(3). The ALJ also noted, when discussing Dr. Messer's opinion, that he had "infrequent contact" with Plaintiff. This is an accurate characterization, given Dr. Messer's statement that he treated Plaintiff monthly for three months in 2010, and had then had single sessions with Plaintiff in

2013 and 2014. (T.316, 313-14, 335). The nature of Plaintiff's treatment with Dr. Messer is relevant to the credibility factors pertaining to the pharmaceutical and other treatment modalities utilized by Plaintiff in an attempt to alleviate the symptoms of his mental impairments. Plaintiff's reported list of medications does not include any prescription drugs or non-prescription remedies for Asperger's Syndrome or anxiety disorder. In an undated disability report, Plaintiff stated that he takes the following medications: amlodipine (a calcium channel blocker), fish oil, glipizide (an anti-diabetic medication), hydralazine (a vasodilator), iron, lovastatin (a statin), metoprolol (a beta-blocker), triamterene (a diuretic), hydrocholorthiazide (a diuretic), and vitamin D. (T.148). Plaintiff's sporadic and infrequent appointments with Dr. Messer suggest that the symptoms from his mental impairments are not as debilitating as he alleges. See F.S. v. Astrue, No. 1:10-CV-444 MAD, 2012 WL 514944, at *20 (N.D.N.Y. Feb. 15, 2012) ("The Commissioner may discount a [claimant]'s testimony to the extent that it is inconsistent with medical evidence, the lack of medical treatment, and activities during the relevant period.") (citing Howe-Andrews v. Astrue, No. CV-05-4539(NG), 2007 WL 1839891, at *10 (E.D.N.Y. June 27, 2007) ("[T]he Commissioner discounted [the claimant]'s testimony and affidavit to the extent that they were inconsistent with medical evidence, the lack of medical treatment, and her own activities

during the relevant period. This conclusion was based on substantial evidence. . . .As a result, the Commissioner was not in error in considering but ultimately rejecting [the claimant]'s complaints and allegations of limitations.")).

Furthermore, there is substantial support in the record for the ALJ's decision to discredit Plaintiff's subjective statements that his symptoms were so severe as to be disabling within the meaning of the Act. In particular, the Court notes that Plaintiff's allegations of severe difficulties in the context of social interaction are inconsistent with treatment records from various providers such as Dr. Santa Maria and Dr. Fabiano, who both stated that Plaintiff was a good candidate for vocational training, thus indicating a greater degree of work-related functional ability than contemplated by Plaintiff's testimony. See Poupore v. Astrue, 566 F.3d 303, 305-06 (2d Cir. 2009) (ALJ's determination that claimant was not disabled was supported by substantial evidence, including report of claimant's treating physician stating that claimant would be an excellent candidate for vocational rehabilitation).

## CONCLUSION

For the foregoing reasons, the Court finds that the Commissioner's decision is supported by substantial evidence and, to the extent there is any legal error in the decision, it is harmless. Therefore, the Court affirms the Commissioner's decision denying benefits, grants Defendant's motion for judgment on the

pleadings, and denies Plaintiff's motion for judgment on the pleadings. The Clerk of Court is directed to close this case.

**SO ORDERED.**

**S/ Michael A. Telesca**

_____
HON. MICHAEL A. TELESCA
United States District Judge

Dated: May 31, 2017
Rochester, New York.